UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN N. KANGETHE,

    Plaintiff,

       v.                               Civil Action No. 11-2209 (JDB)

DISTRICT OF COLUMBIA,

    Defendant.

## MEMORANDUM OPINION

Plaintiff John Kangethe, proceeding pro se, brings this suit against his employer, the District of Columbia. He asserts violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Equal Pay Act of 1963. He also alleges that he was subjected to retaliation and a hostile work environment. The District has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and Kangethe has filed a memorandum in opposition. For the reasons set forth below, the Court will grant in part and deny in part the District's motion to dismiss.

## BACKGROUND

Taking as true the allegations in Kangethe's complaint, see Oberwetter v. Hilliard, 639 F.3d 545, 549 (D.C. Cir. 2011), this case arises out of the following facts. Kangethe, a 59-year-old naturalized citizen of the United States, is a labor economist in the Office of Labor Market Research and Information ("LMI") at the District of Columbia Department of Employment Services ("DOES"). See Am. Compl. [Docket Entry 23] ¶¶ 1-2, 19 (Oct. 1, 2012). He has a Ph.D. in economics and earns a GS-12 salary of $64,439. See id. ¶¶ 16, 27. Until the events at

1

issue here, Kangethe alleges that he had received "uniformly favorable" job performance reviews. See id. ¶ 21.

Kangethe alleges that the position of LMI Supervisory Labor Economist—the section head—opened in April 2008. See id. ¶ 22. The position was advertised as a GS-14. See id. ¶ 25. During DOES's search for a new supervisor, Kangethe was appointed acting LMI head, taking on significant additional responsibilities. See id. ¶¶ 26, 30. He alleges that he performed these tasks with excellence. See id. ¶¶ 30-31. While serving as acting head, Kangethe applied for the permanent position and was found to be the most qualified candidate. See id. ¶¶ 31-32. However, Joseph Walsh, the DOES Director, declined to select Kangethe for the position, instead asking whether other candidates were available and directing DOES to relist the job opening. See id. ¶ 35. Kangethe alleges that this process repeated itself four times, with him applying for the position, being the only eligible candidate, and Walsh declining to give him the job. See id. ¶¶ 36-42.

During this time, Kangethe alleges that he continued to be paid at the GS-12 level despite performing GS-14 work. See id. ¶¶ 27, 30, 55. On August 16, 2009, he received a temporary pay raise to the GS-14 level for 90 days, while continuing to carry out the same duties. See id. ¶ 50. Kangethe alleges that he then contacted a Human Resources staff member to ask for retroactive pay for his prior work as acting LMI head. See id. ¶¶ 52-53. After the temporary promotion expired, he continued to perform the supervisory responsibilities for another month. See id. ¶¶ 55-58. On December 14, 2009, Kangethe alleges that he again requested an update from Human Resources on his compensation. See id. ¶ 56. Later that day, he was informed by Eric Scott, DOES's new Chief of Staff, that the Human Resources staff member "indicated that [Kangethe had] reached out to her concerning [his] duties." See id. ¶ 57 (internal quotation marks omitted). Scott then notified Kangethe that he was no longer the official acting supervisor

and stripped him of his supervisory duties. See id. ¶¶ 57-58.

Kangethe filed an Equal Employment Opportunity ("EEO") complaint on February 2, 2010. See id. ¶ 61. On April 19, 2010, he initiated the Equal Employment Opportunity Commission administrative process. See id. ¶ 64.

In May 2010, Scott announced that a new position, Associate Director of Policy, Legislative, and Statistical Analysis, would be created to replace the still-vacant LMI supervisory position, and that a new person would be brought in to assume the Associate Director position. See id. ¶ 67. Kangethe alleges that the position was not advertised on the District's Human Resources website, in violation of its personnel rules. See id. ¶ 70. Nonetheless, an individual was invited to interview for the position. See id. ¶ 71.

DOES ultimately failed to hire anyone for this position, and Kangethe claims that the responsibilities were then shifted to a new position, Associate Director for Labor Market and Workforce Research and Analysis, which was advertised at a GS-15 level. See id. ¶ 80. Kangethe alleges that the job description for this position was altered in an attempt to "discourage or disqualify" him. See id. ¶ 81. He still applied, but DOES hired a younger white man with allegedly less relevant experience. See id. ¶¶ 84-85. According to the complaint, this hire came at the end of a four-year period where the position or its equivalent remained vacant, despite the availability of funding for it throughout that time. See id. ¶¶ 88-89.

Kangethe initiated this action against DOES on December 13, 2011. Shortly after, DOES moved to dismiss the case, arguing that it was not a suable entity, and that in any event it had not been properly served. The Court denied the motion, giving Kangethe an opportunity to file and properly serve an amended complaint naming the District of Columbia as a defendant. See Mem. Op. & Order [Docket Entry 22] at 5 (Sept. 18, 2012). He did so. The District now moves to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim. See Def.'s Mot.

to Dismiss [Docket Entry 27] at 1 (Oct. 26, 2012).

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567

4

F.3d 672, 681 (D.C. Cir. 2009). Determining the plausibility of a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679.

The pleadings of pro se parties are "'to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson, 551 U.S. at 94 (citation omitted). Still, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted." Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

## DISCUSSION

### I.   Non-Promotion Claims

Kangethe contends that the District discriminated against him based on his race, national origin, and age, as well as retaliated against him, in refusing to promote him to three positions at DOES: LMI Supervisory Labor Economist ("Position One"); Associate Director of Policy, Legislative, and Statistical Analysis ("Position Two"); and Associate Director for Labor Market and Workforce Research and Analysis ("Position Three"). See Am. Compl. ¶ 96. He alleges that he applied to Position 1 itself on four occasions, see id. ¶ 42, and that the other two positions were each an outgrowth of the first. See, e.g., id. ¶¶ 66, 80.

The District counters that Kangethe cannot state a claim under Title VII or the ADEA because he has failed to establish a prima facie case of discrimination. See Def.'s Mot. to Dismiss at 7-8. But in employment discrimination cases involving Title VII or ADEA claims, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002) (denying motion to dismiss Title VII and ADEA claims for failure to plead a prima facie case of discrimination). This principle survives the Supreme Court's subsequent rulings. See Twombly, 550 U.S. at 569-70 (explaining

that the holding preserves "Swierkiewicz, which held that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination'" (alteration in original) (citation omitted)); see also Richie v. Vilsack, 287 F.R.D. 103, 105 (D.D.C. 2012) (denying motion to dismiss Title VII complaint for failing to plead facts establishing a prima facie case). Consequently, the District's insistence that Kangethe must present a prima facie case to survive a motion to dismiss—an assertion it supports almost exclusively with citations to summary judgment cases—is incorrect.

Rather than pleading facts establishing a prima facie case, Kangethe's claim must simply "'give the defendant fair notice of what [his] . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (quoting Conley, 355 U.S. at 47). Applying this standard, Kangethe's specific allegations are sufficient: he claims that DOES failed to promote him because of his race, national origin, and age in violation of Title VII and the ADEA, and his complaint provides a detailed account of the allegedly discriminatory conduct, including specific dates of the various incidents, as well as the relevant characteristics of many of the persons involved. See Swierkiewicz, 534 U.S. at 514. Therefore, Kangethe's Title VII and ADEA claims are factually sufficient to withstand a motion to dismiss.[1]

The District's other arguments for dismissal fare no better. It maintains that because Position One was never filled, Kangethe will never be able to establish one of the prima facie requirements. See Def.'s Mot. to Dismiss at 7 (citing Abdelkarim v. Tomlinson, 605 F. Supp. 2d 116, 121 (D.D.C. 2009)). But the District mischaracterizes the prima facie requirements. To establish a prima facie case under Title VII,

> [the] plaintiff must show that (1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his

---

[1] While Kangethe alleges that he is "a member of a racial minority," see Am. Compl. ¶ 105, and notes that he is a naturalized citizen, see id. ¶ 1, he fails to specify his race and national origin. Still, the allegations he does make suffice to make his entitlement to relief plausible.

>qualifications he was rejected; and (4) either someone not of his protected class filled the position or the position remained vacant and the employer continued to seek applicants.

Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000). As the D.C. Circuit has made clear, in order to meet the fourth requirement, a plaintiff must show either that the position was filled by someone outside his protected class or that "the position remained vacant and the employer continued to seek applicants." See id. Because Kangethe alleges that the position remained open while DOES continued looking for other applicants, see Am. Comp. ¶ 35, the District's argument proves meritless.[2]

The District also contends that Kangethe cannot establish a prima facie case for Position Two because he never applied for that position. See Def.'s Mot. to Dismiss at 7. However, Kangethe alleges that the lack of an opportunity to apply was itself the product of discrimination. See Am. Compl. ¶ 97. Addressing such circumstances, the D.C. Circuit has held that a discrimination action can be brought when an employer fails to open a position to competition—thus depriving the plaintiff of an opportunity to apply—as long as the plaintiff expressed his interest in the position. See Cones, 199 F.3d at 518 (dismissing, as "requir[ing] little discussion," the argument that an employee who expressed interest in a position was barred from raising a Title VII claim simply because he did not apply to a position that was "never opened . . . to competition"). Here, Kangethe alleges that he repeatedly expressed interest in the position, and that the position was not open to competition in part to prevent him from applying. These allegations are sufficient for the claim to survive a motion to dismiss.

---

[2] Although it is not clear from its motion, the District appears to argue that Kangethe has failed to allege an adverse action as to this claim. This argument is unavailing because the alleged non-promotion—a non-selection to a position at a higher pay grade—is a classic adverse action. See Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (being "fired or denied a job or promotion," or "suffer[ing] any reductions in salary or benefits . . . are the typical adverse actions in employment discrimination cases"); see also Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006) ("hirings, firings, [and] promotions" are the classic adverse actions, although adverse actions "are not confined" to these categories).

Finally, the District argues that Kangethe cannot establish a prima facie showing with respect to Position Three because he lacked the necessary job qualifications. See Def.'s Mot. to Dismiss at 7. This argument, too, runs squarely against D.C. Circuit case law. Kangethe asserts that DOES changed the job qualifications precisely in order to "discourage or disqualify" him from applying. See id. ¶ 81; see also id. ¶¶ 82-83 (highlighting the change in job descriptions). In such circumstances, the fact that a plaintiff is not "technically" qualified poses no obstacle. As the D.C. Circuit explained,

> [this] theory of "qualification" would open a potential loophole in Title VII. Agencies seeking to prevent minority employees from advancing to higher level positions could simply refuse to open those positions to competition and instead laterally transfer non-minorities. Agency employees would be unable to mount Title VII cases because none would be "technically" qualified. Nothing in Title VII or McDonnell Douglas supports such a counterintuitive result.

Cones, 199 F.3d at 518. Rather, a plaintiff must simply establish that he is "substantively" qualified. See id. And Kangethe, who alleges that he performed the positions' core tasks with excellence over an eighteen-month period, has amply alleged his substantive qualifications. See Am. Compl. ¶ 101. The Court hence has no basis to dismiss this claim.

## II. Reassignment of Supervisory Duties

Kangethe also alleges that DOES engaged in retaliatory conduct and age discrimination in stripping him of his supervisory responsibilities and acting LMI head status. See id. ¶¶ 110-11, 113, 116, 129. The District argues that these claims must be dismissed because Kangethe has failed to allege an adverse action, and because he has failed to allege a protected activity that can serve as a basis for the retaliation claim.

The District's first argument is easily dismissed. The D.C. Circuit has held that "withdrawing an employee's supervisory duties constitutes an adverse employment action." Stewart v. Ashcroft, 352 F.3d 422, 427 (D.C. Cir. 2003); see also Burke v. Gould, 286 F.3d 513,

8

Case 1:11-cv-02209-JDB   Document 33   Filed 07/15/13   Page 9 of 13

522 (D.C. Cir. 2002) (expressing "no doubt" that "the removal of [the employee's] supervisory responsibilities constituted an adverse employment action"); Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006). As a result, Kangethe's allegations—that he was stripped of an array of supervisory duties associated with a position that was two steps higher on the pay scale—easily suffice to establish an adverse action.

The adequacy of Kangethe's alleged protected activity poses a closer question. To state a prima facie case of retaliation, "the plaintiff must establish that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse personnel action, and (3) a causal connection existed between the two." Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002). According to his complaint, Kangethe originally sent an e-mail to Human Resources about his compensation on August 21, 2009, stating that he was "entitled to be paid" for his additional responsibilities. See Am. Compl. ¶ 52 (internal quotation marks omitted). On December 14, 2009, Kangethe requested an "update" from Human Resources on his retroactive compensation. See id. ¶ 56. Later that day, he received an e-mail from Eric Scott, who made reference to Kangethe's e-mail to Human Resources and then officially relieved him of his LMI supervisory duties, transferring those duties to younger employees. See id. ¶¶ 57-58, 110-11.

The District contests Kangethe's alleged protected activity, arguing that it is "plain on its face" that his December 14 e-mail to Human Resources asking for an "update" on compensation does not qualify as such an activity. See Def.'s Mot. to Dismiss at 10. But the District oversimplifies. Opposing an unlawful employment practice qualifies as protected activity, even when the opposition is informal, i.e., occurs outside of the EEO administrative process. See Broderick, 437 F.3d at 1232 ("While no 'magic words' are required, the complaint [to supervisors] must in some way allege unlawful discrimination, not just frustrated ambition."). The question is then whether Kangethe's e-mail opposed activity he "reasonably and in good

9

faith believed was unlawful under" Title VII. See McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (emphasis omitted). Based on the allegations in the complaint, it is plausible that Kangethe's August e-mail (and the December e-mail renewing the issue by seeking an update) opposed the withholding of pay as unlawful under civil rights laws. While the viability of this claim will ultimately depend on the context of Kangethe's statement that he was "entitled" to additional pay, his allegations suffice at this pre-discovery stage.[3]

### III.  Retroactive Pay Claims

Kangethe claims that DOES's denial of retroactive pay for his time as acting LMI head constitutes retaliation and violates the Equal Pay Act. He contends that the retaliation was in response to two allegedly protected activities: on February 2, 2010, Kangethe contacted an EEO Counselor to file civil rights claims against DOES, and on February 16, 2010, he e-mailed Human Resources "seeking advice" about his retroactive compensation and "suggesting possible improper hiring practices at DOES." See Am. Compl. ¶ 130. Kangethe was denied retroactive pay on February 17, 2010. See id. ¶¶ 63, 130.

Responding to this retaliation claim, the District asserts that an e-mail "seeking advice" on retroactive compensation is not protected activity. Def.'s Mot. to Dismiss at 10 (citing Am. Compl. ¶ 130). But Kangethe's e-mail also "suggest[ed] possible improper hiring practices." See Am. Compl. ¶ 130. This e-mail hence qualifies as a protected activity because (at least as described in the complaint) it opposed an unlawful employment practice. See Broderick, 437 F.3d at 1232; see also McGrath, 666 F.3d at 1380. Therefore, the District's argument that such activity is "plain[ly]" not protected is incorrect. See Def.'s Mot. to Dismiss at 10.

The District's other argument against the retaliation claim proves similarly unavailing. It

---

[3] In his opposition, Kangethe makes clear that he does not allege a separate claim based on DOES's failure to extend his temporary promotion to the GS-14 pay level. See Pl.'s Opp'n to Def.'s Mot. to Dismiss [Docket Entry 28] at 11 (Nov. 7, 2012). Accordingly, the Court will not address the viability of any such claim.

contends that the denial of retroactive pay does not amount to an adverse action. See id. As the D.C. Circuit has made clear, this argument is wrong. "[S]uffer[ing] any reductions in salary or benefits" is a "typical adverse action[] in employment discrimination cases." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). And actions that inflict "direct economic harm," such as the denial of a "bonus" or other "tangible, quantifiable award," are adverse actions. Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (emphasis and internal quotation marks omitted). DOES's alleged denial of payment inflicts direct economic harm on Kangethe, and therefore it qualifies as an adverse action. See id. at 552-53.

Kangethe also challenges his denial of pay under the Equal Pay Act, asserting that he was unlawfully paid a GS-12 salary while serving as acting LMI head, and that younger individuals performing these duties were compensated at a substantially higher level. See Am. Compl. ¶¶ 122-24. Kangethe claims that this pay disparity contravenes the Equal Pay Act principle of "equal pay for equal work," see Pl.'s Opp'n at 12 (citing Shultz v. Wheaton Glass Co., 421 F.2d 259, 265 (3d Cir. 1970) (per curiam)), and that he consequently deserves retroactive compensation for his time as acting LMI head.

The District correctly points out that Kangethe's claim under the Equal Pay Act is fatally flawed—as the statute's plain text makes clear, the Act applies only to pay disparities stemming from sex discrimination. Pay disparities due to other reasons, by contrast, are not actionable. The Equal Pay Act provision Kangethe cites, entitled "Prohibition of sex discrimination," bars "discriminat[ion] . . . on the basis of sex." See 29 U.S.C. § 206(d)(1). The Supreme Court has recognized this focus, explaining that the Act establishes the "principle of equal pay for equal work regardless of sex," Corning Glass Works v. Brennan, 417 U.S. 188, 190 (1974) (emphasis added), and it referred to Congress's purpose in passing the Act as remedying the "ancient but outmoded belief" that a man should be paid more than a woman for performing the same duties,

id. at 195 (internal quotation marks omitted). See also Goodrich v. Int'l Bhd. of Elec. Workers, 712 F.2d 1488, 1489-90 (D.C. Cir. 1983) (recognizing the Equal Pay Act as "firmly establish[ing] as federal law the 'principle of equal pay for equal work regardless of sex'" (quoting Brennan, 417 U.S. at 190)). Indeed, the very case on which Kangethe relies recognizes that the Act prohibits discrimination in pay "on the basis of sex," and applies it in a sex discrimination context. See Shultz, 421 F.2d at 261 (internal quotation marks omitted). Because the statute provides a cause of action only to plaintiffs alleging sex discrimination, Kangethe cannot state a claim by alleging pay discrimination based on race, national origin, or age.

### IV.   Remaining Claims in Count Four

In Count Four, titled "Retaliation-Humiliation-Embarrassment-Emotional Distress," Kangethe furnishes a lengthy list of alleged adverse actions, which he contends were retaliatory and constituted a hostile work environment. The District's only argument as to this Count is that the retaliation claims must be dismissed because Kangethe's December 2009 and February 2010 e-mails to Human Resources do not constitute protected activities. See Def.'s Mot. to Dismiss at 10. As discussed above, Kangethe's allegations plausibly indicate that both e-mails opposed practices he reasonably believed violated Title VII, so they constitute protected activities. Moreover, the District fails to address other alleged protected activities, such as contact with the EEO office, that preceded many of the alleged actions. Therefore, there is no basis to dismiss any claims in this Count.

### **CONCLUSION**

For the foregoing reasons, the Court will dismiss Kangethe's Equal Pay Act claims and allow all other claims to proceed. A separate Order will be issued on this date.

/s/
JOHN D. BATES

United States District Judge

Dated: <u>July 15, 2013</u>